## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOSCOV'S DEPARTMENT STORE, INC.   : | |
| : | |
| : | |
| Plaintiff,   : | No.  20-cv-3672 |
| : | |
| v.   : | |
| : | |
| AMERICAN GUARANTEE AND   : | **JURY TRIAL DEMANDED** |
| LIABILITY INSURANCE COMPANY,   : | |
| : | |
| Defendant.   : | |
| : | |

## COMPLAINT

Plaintiff, Boscov's Department Store, Inc. ("Boscov's"), by their undersigned counsel, Reed Smith LLP, hereby submits its Complaint against Defendant, American Guarantee and Liability Insurance Company (referred to below as "AGLIC" or "Zurich"), and in support thereof, aver as follows:

## NATURE OF ACTION

1.      This is an action for a declaratory judgment, breach of contract, breach of the duty of good faith and fair dealing and bad faith conduct under 42 Pa. Cons. Stat. Ann. § 8371, arising out of AGLIC's refusal to provide insurance coverage to Boscov's under an all-risk property and business interruption insurance policy Boscov's purchased from AGLIC (the "All-Risk Policy"), concerning business income losses and damages sustained as a result of property damage and interruptions in businesses caused by the United States government's failure to contain and control the spread of the COVID-19 virus, the series of state and local government orders closing Boscov's stores in all locations, and the threat of and actual property damage that Boscov's suffered as a result of COVID 19's ubiquitous presence in the regions in which Boscov's department stores are located.

2.     Boscov's seeks a declaration that its locations suffered direct physical loss of or damage caused by a covered cause of loss to covered property under the All-Risk Policy due to : 1) the United States government's inability and failure to contain and control the spread of COVID 19 from foreign locations into the United States' borders and into the areas where Boscov's operates its department stores; 2) the ubiquitous threat of virus causing insured locations and other properties to be unfit for appropriate business activities, depriving Boscov's of its property and the functionality of its property, and resulting in significant insured losses; and (3) loss of physical use of Boscov's department stores caused by the orders of civil authority issued by numerous state and local government entities forcing their closure due to actual and/or the threat of physical property damage.

3.     Boscov's seeks a further declaration that its coverage under the All-Risk Policy is triggered up to the full limit of liability at each insured location, including for, without limitation, Property Damage and Time Element, Civil or Military Authority, Extra Expense, Leasehold Interest, Accounts Receivable, Civil or Military Authority, Contingent Business Interruption, and Protection and Preservation of Property coverage.

4.     Boscov's further seeks monetary damages and all relief available at law for AGLIC's breach of contract in denying coverage to Boscov's for a covered claim under the All-Risk Policy and failing to pay any of its policyholders' losses.

5.     Finally, Boscov's seeks an award of damages for AGLIC's breach of the duty of good faith and fair dealing and bad faith conduct in violation of 42 Pa.C.S. § 8371 in the manner in which AGLIC responded to Boscov's insurance claim, including but not limited to the failure to investigate the claim in any meaningful fashion, the failure to apply the terms and conditions of the All-Risk Policy in a reasonable manner, the placement of its own interests ahead of that of

Boscov's in every respect in the handling of this claim, and its nationwide strategy of forcing each and every policyholder that purchased its Zurich Edge form policy to have to institute litigation to obtain the benefits of the coverage that exists for the losses suffered by Boscov's and by Zurich's other policyholders.  This pattern of bad faith conduct has manifested itself towards Boscov's and other policyholders in the foregoing ways regarding numerous claims made under Zurich policies in the Commonwealth of Pennsylvania and nationwide.

## PARTIES

6.      Plaintiff, Boscov's Department Store, Inc., is a Pennsylvania corporation, with its principal place of business at 4500 Perkiomen Ave., Reading, Pennsylvania.

7.      At all relevant times, Boscov's was and still is in the business of operating retail department stores.  Locations insured under the All-Risk Policy include, among others, those set forth in a Schedule of Locations referenced in the policy and Locations described in the policy.

8.      At all relevant times, Defendant, AGLIC, was and continues to be an insurance company organized and existing under the laws of the State of New York with its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois.  AGLIC sells policies of insurance, including property and business interruption insurance policies.

9.      At all relevant times AGLIC was, and presently is, duly authorized to transact the business of insurance in the Commonwealth of Pennsylvania and is in fact transacting the business of insurance in the Commonwealth Pennsylvania.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that there is a complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that, among other things, a substantial portion of the events giving rise to the claim occurred in this District.

12.     This Court has personal jurisdiction over AGLIC because AGLIC has the requisite minimum contacts with Pennsylvania by selling the All-Risk Policy at issue to businesses based in Pennsylvania and denying coverage under the All-Risk Policy for losses suffered in Pennsylvania, among other places.

## FACTUAL BACKGROUND

### A.     Boscov's Family Department Store Business

13.     Boscov's is a successful, family owned business that owns and operates department store locations in Pennsylvania, New York, New Jersey, Delaware, Maryland, Ohio, Connecticut, and Rhode Island.

14.     Prior to the onset of the pandemic, Boscov's was a consistently profitable and expanding retail department store chain with fifty insured locations employing in excess of 5,800 employees across numerous states including 25 in Pennsylvania.

### B.     The COVID-19 Global Pandemic

15.     In December 2019, during the term of the All-Risk Policy, an outbreak of illness known as COVID-19 caused by a novel coronavirus formally known as SARS-CoV-2 was first identified in Wuhan, Hubei Province, China.  In an unprecedented event that has not occurred in more than a century, a pandemic of global proportions then ensued, with the virus quickly spreading to Europe and then to the United States.

16.     The rapid spread of COVID-19 is due in part to the highly transmissible character of the virus.  For example, as of March 1, 2020 there were 42,198 confirmed COVID-19 cases across the globe.  That number increased to 747,899 confirmed cases in April and 2,421,669

cases in May. *See* https://graphics.reuters.com/CHINA-HEALTH-MAP/0100B59S39E/index.html. As of June 19, 2020, there had been more than 2.2 million cases in the United States and nearly 120,000 deaths. *See* https://www.cnn.com/interactive/2020/health/coronavirus-us-maps-and-cases/.

17. According to the Center for Disease Control ("CDC"), "everyone is at risk for getting COVID-19." According to the CDC and World Health Organization (the "WHO"), a person may become infected by: (1) coming into close contact (about 6 feet) with a person who has COVID-19; (2) respiratory droplets when an infected person talks, sneezes, or coughs; and/or (3) touching surfaces or objects that have the virus on them, and then touching his or her mouth, eyes, or nose. *See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html; https://www.who.int/news-room/q-a-detail/q-acoronaviruses.

18. Asymptomatic individuals may also transmit the virus. https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses. At least 44% of all infections occur from people without any symptoms. *See* https://www.nature.com/articles/s41591-020-0869-5; https://www.nbcnews.com/health/health-news/asymptomatic-covid-19-cases-may-be-more-common-suspected-n1215481. Thus even individuals who appear healthy and present no identifiable symptoms of the disease have and continue to spread the virus by breathing, speaking, or touching objects and surfaces.

19. According to a report in The New York Times, "[a]n infected person talking for five minutes in a poorly ventilated space can also produce as many viral droplets as one infectious cough." https://www.nytimes.com/interactive/2020/04/14/science/coronavirus-transmission-cough-6-feet-arul.html. And one human sneeze can expel droplets that can travel

up to 27 feet at nearly a hundred miles an hour. www.nationalgeographic.com/science/2020/04/coronaviruscovid-sneeze-fluid-dynamics-in-photos/.

20.     Although these virus-containing droplets are very small, they are still physical objects that can travel and attach to other surfaces and cause harm, loss, and damage.

21.     Current evidence suggests that SARS-CoV-2 may remain viable for hours to days on surfaces made from a variety of materials.    https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaningdisinfection.html; https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days;

https://www.thelancet.com/journals/lanmic/article/PIIS2666-5247(20)30003-3/fulltext.     The virus can survive and remain virulent in aerosols for up to three hours, on stainless steel and plastic for 3 to 6 days, on glass and banknotes for 3 days, on wood and cloth for 24 hours, and and on cardboard for up to 24 hours.   https://www.nejm.org/doi/pdf/10.1056/NEJMc2004973; https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days.   Testing of similar viruses suggests SARS-CoV-2 can survive on ceramics, silicon, and paper for at least 5 days.   And the CDC confirmed that the virus was identified on surfaces of the Diamond Princess cruise ship a full 17 days after the cabins were vacated.   https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm.

22.     Department stores as indoor public spaces are susceptible to circumstances favorable to the spread of the virus because they are indoors, involve close contact between people and frequent touching of the same property by different people.   A recent article, soon to be published by the CDC, analyzed a case study of three families (families A, B, and C) who had eaten at an air-conditioned restaurant in Guangzhou, China.     *See*

https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article.   One member of family A, patient A1, had recently traveled from Wuhan, China.  On January 24, 2020, that family member ate at a restaurant with families A, B, and C.  By February 5, 2020, 4 members of family A, 3 members of family B, and 2 members of family C had become ill with COVID-19.  *Id.*  The only known source for those affected persons in families B and C was patient A1 at the restaurant.

23.     Without a vaccine, effective control of the pandemic relies on measures designed to reduce human-to-human and surface-to-human exposure.

24.     As the world reacted to the oncoming pandemic, the mere threat of spread of such a deadly virus in indoor locations resulted in businesses such as Boscov's properties being rendered unable to be used for their intended purposes.

### C.     Global, National, State and Local Reaction

25.     On January 30, 2020, with the outbreak spreading outside of China, impacting many countries including the United States, the WHO declared the COVID-19 outbreak a Public Health Emergency of International Concern.

26.     The next day, the United States Department of Health and Human Services declared that a public health emergency existed nationwide because of confirmed cases of COVID-19 in the United States.

27.     The earliest two confirmed deaths in the United States due to COVID-19 occurred in early and mid-February 2020.

28.     On March 11, 2020, the WHO officially declared the COVID-19 outbreak a worldwide pandemic.

29.     Beginning in early March 2020, U.S. state and local governments issued orders suspending or severely curtailing the operations of all "non-essential" or "high risk" businesses

in response to the virus.  This included retail department store locations such as those owned and operated by Boscov's.

30.     In March 2020, states, counties, and cities where Boscov's insured stores are located declared states of emergency to help prepare for and avoid broader spread of COVID-19.

31.     In March 2020, states where Boscov's insured stores are located issued civil orders requiring retail stores to operate their premises and conduct their operations on those premises so as to reduce their customer occupancy by a significant percentage.

32.     In March 2020, states, counties, and cities where Boscov's insured stores are located issued orders closing or restricting access to numerous Boscov's locations insured under the Policy.

33.     These orders, together with similarly construed orders issued by government officials, effectively limited Boscov's ability to continue operations, resulting in an interruption of necessary operations and an immediate loss of business income and incurring of extra expenses.  The orders referenced above are identified in a spreadsheet attached as Exhibit "A."

34.     Some of the county and city orders referenced above specifically state they are being issued because the virus causes and has caused or imminently threatens physical loss or damage to property and human health.  These orders are attached as Composite Exhibit "B."

35.     Other states, and county and city officials have issued similar orders throughout the United States referencing physical property loss or damage or imminent threatened physical property loss or damage from the virus.

36.     In response to these events, numerous Boscov's locations closed on March 13, 2020 and the remainder closed on March 17, 2020.

D. **The All-Risk Policy**

37.     To protect against property damage, threats of imminent physical property loss, and interruptions to Boscov's businesses due to these conditions and to protect against resulting orders of civil and military authorities that may further interrupt its businesses, Boscov's purchased from AGLIC the All-Risk Policy, more specifically a Zurich EDGE property and business interruption insurance policy, No. ERP 8170483-24, with a policy period from June 1, 2019 to June 1, 2020.  A copy of the All-Risk Policy is attached hereto as Exhibit "C."

38.     Boscov's is insured under the All-Risk Policy which insures all Insured Locations unless otherwise provided in the policy, including all Boscov's locations listed on the Schedule of Locations, those covered as Miscellaneous Unnamed Locations, and those covered under Newly Acquired Coverage or Errors and Omissions Coverage.

39.     The All-Risk Policy has a Limit of Liability of $175,000,000 for the total of all coverages combined regardless of the number of Locations involved.  The Limit of Liability is subject to certain sublimits within a coverage part set forth in greater detail in the policy's Declarations.

40.     Under the Insuring Agreement, the All-Risk Policy insures against "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy."

41.     In Section IV – Time Element, AGLIC promises to "pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability.  The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location.  The Suspension must be due to direct physical loss of

or damage to Property (of the type insurable under this Policy other than Finished Stock) caused by a Covered Cause of Loss at the Location, or as provided in Off Premises Storage for Property Under Construction Coverages.  The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations.  The Time Element loss must result from the necessary Suspension of the Insured's business activities at the other Insured Locations.  Such other Location must depend on the continuation of business activities at the Location that sustained direct physical loss or damage caused by a Covered Cause of Loss."

42.     Time Element Coverages in the All-Risk Policy include protection for Gross Earnings as calculated in Section 4.02.01, payment of additional Gross Earnings Loss through the Extended Period of Liability as set forth in Section 4.02.02, reasonable and necessary Extra Expense as set forth in Section 4.02.03, and Leasehold Interest losses as set forth in Section 4.02.04.

43.     Special Coverages and Described Causes of Loss are set forth in Section V of the All-Risk Policy, and these clarify that among other things Covered Causes of Loss under the Policy include Accounts Receivable, Civil or Military Authority, Contingent Business Interruption, and Protection and Preservation of Property, so long as these losses are themselves caused by a Covered Cause of Loss.

44.     Covered Causes of Loss under the All-Risk Policy include losses resulting from Civil Authority orders that prohibit access to the Location, if the order results from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss to property not owned / occupied by the policyholder.

45.    The All-Risk Policy contains Exclusion 3.03.01.01, which excludes "Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy."  As defined by the All-Risk Policy at Section 7.09, "Contamination" is, "Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew."

46.    The "Contamination" exclusion, to the extent it potentially applies, which is denied, requires "actual presence" of a virus for coverage to be restricted for "inability to use or occupy property or any cost of making property safe or suitable for use or occupancy."

47.    The All-Risk Policy provides coverage for losses at Boscov's locations rendered incapable of use or occupation due to mere suspicions a deadly virus at the locations or at properties open to the public generally, or suspicion such properties may be unsafe for human occupancy or use.  The All-Risk Policy further provides coverage for the impacts of resulting orders of civil authorities that closed stores and other properties or otherwise restricted access or ability to operate Boscov's locations for certain periods of time.

48.    Boscov's is protected under the All-Risk Policy from its costs from closures and mitigative efforts, including but limited to actions taken in responses to Civil Authority Orders, as well as the costs of efforts aimed at preventing the virus from becoming actually present in any insured locations or any neighboring buildings.

49.    No Boscov's location has been required to respond to the actual presence of virus.

50.    In any event, the "Contamination" exclusion set forth above is modified and redefined by endorsement such that "virus" is no longer part of the definition of

"Contamination," so that even if actual presence of virus were to be alleged, it would not be excluded by the All-Risk Policy as endorsed.

51.     In the Endorsement titled, "Amendatory Endorsement – Louisiana," Exclusion 3.03.01.01, the "Contamination" exclusion, is "deleted in its entirety and replaced by the following:   3.03.01.01. Contamination or asbestos, and any cost due to Contamination or asbestos including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy."

52.     In the same Endorsement, the definition of "Contamination" in Section VII of the Policy including the reference to "virus" is "deleted" and "replaced" by the following: "Contamination(Contaminated) - Any condition of property due to the actual presence of any Contaminant(s)."

53.     In the same Endorsement, the definition of "Contaminant(s)" is "deleted" from Section VII of the Policy and "replaced" with a definition containing no reference to "virus": "Contaminant(s) - Any solid, liquid, gaseous, thermal or other irritant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), other hazardous substances, Fungus or Spores."

54.     The Louisiana Amendatory Endorsement is not limited in application to Louisiana in geographical scope.  There is no restriction on the alterations to the Contamination exclusion or the definition of Contamination in the Endorsement itself or elsewhere in the All-Risk Policy.

**E.     Boscov's Losses Are Covered by the All-Risk Policy.**

55.     The direct physical loss, loss of use and interruptions of Boscov's businesses at each of their Locations caused by threat of virus, and the closure of the Boscov's Locations as a

consequence of the above-referenced closure orders by state and local official are covered causes of loss under the All-Risk Policy.

56.     The threat of virus and the above-referenced closure orders directly impacted Boscov's businesses, which do not qualify as essential businesses.   These far-reaching restrictions and prohibitions on the activities that can be conducted at its locations have been catastrophic for Boscov's locations and the business as a whole, interrupting their operations so pervasively as to effectively force them to close, thereby enduring a prolonged curtailment of earnings that threatens their survival.

57.     The threat of virus and the above-referenced closure orders issued by state, county, and city officials have caused direct physical loss of or damage to properties Boscov's depends on to attract business to its insured restaurants.

58.     The threat of virus and above-referenced closure orders have operated to prohibit access to Boscov's businesses and the immediate surrounding areas.

59.     The closure of Boscov's Locations also served to mitigate further loss.

**F.      AGLIC's Duties Under the All-Risk Policy and Pennsylvania Law**

60.     As a result of the Boscov's inability to use its properties due to the threat of virus and the closure orders, AGLIC is obligated by the All-Risk Policy to pay up to the Policy Limit for Property Damage and Time Element losses including Civil or Military Authority, Extra Expense, Leasehold Interest, Accounts Receivable, Contingent Business Interruption, and Protection and Preservation of Property at each of the Locations described in the All-Risk Policy or set forth in the Schedule of Values.

61.     In addition, the suspected presence of the virus throughout the states where Boscov's Locations are located caused and continues to cause direct physical loss of or damage

to property sufficient to trigger Property Damage and Time Element coverage including Civil or Military Authority, Extra Expense, Leasehold Interest, Accounts Receivable, Contingent Business Interruption, and Protection and Preservation of Property at each of the Locations described in the All-Risk Policy or set forth in the Schedule of Values.

62.     Even where Civil or Military Orders have permitted or may now permit certain Locations to reopen lawfully, the suspected presence of the virus throughout the states where the covered Locations are located has caused and continues to cause direct physical loss of or damage to Boscov's because the Locations are unusable for their intended purpose or unsafe for normal human occupancy or continued use.  Boscov's has lost the functionality of those premises and has lost their economic utility.  Because the highly contagious and deadly virus is spread through several means, including human-to-human contact, aerosol, and surface contamination, Boscov's' Locations were unable to serve their full, intended use, suffered direct physical loss of or damage, and sustained a necessary suspension of their operations.

63.     Moreover, the imminent threat of the presence of the virus in and around the areas immediately surrounding Boscov's properties resulted in direct physical loss of or damage to property, such that the continuation of business operations as normal would certainly and unavoidably cause physical loss of or damage to the Locations at issue, and/or cause further physical loss of or damage to the business.

64.     As there is no method to test for the presence of COVID-19 on property, as many of those afflicted with COVID-19 are asymptomatic yet able to transmit the virus, and as the employees and guests of Boscov's were so numerous, it is statistically certain that the virus has been and remains a threat to the insured properties and surrounding properties, and ongoing direct physical loss of or damage must thus be presumed.

65.     As a result of the foregoing, AGLIC is obligated to pay for direct physical loss of or damage to the premises described in the Schedule of Values and the All-Risk Policy and all Property Damage and Time Element loss up to the All-Risk Policy's Limit of Liability, including Civil or Military Authority, Extra Expense, Leasehold Interest, Accounts Receivable, Contingent Business Interruption, and Protection and Preservation of Property loss.

66.     Pennsylvania state insurance law further requires that insurance companies including AGLIC act in good faith, abstain from deception and practice honesty and equity in all insurance matters.  The business of insurance is affected by the public interest and engaging in the business of insurance requires insurers like AGLIC to promptly conduct fair, balanced, and thorough investigations of all bases of claims for benefits made by their insureds, with a view toward honoring the claims.  As part of these obligations, an insurance company is obligated to diligently search for and consider evidence that supports coverage of the claimed loss, and in doing so must give at least as much consideration to the interests of its insured as it gives to its own interests.

67.     AGLIC has a duty to adopt and maintain a consistent and rational interpretation of the All Risk Policy sold to Boscov's.

68.     AGLIC is bound to interpret and administer its insurance policies in accordance with the requirements of local Pennsylvania law.

69.     AGLIC is bound to investigate Boscov's claim in good faith and with an individualized investigation into the cause of loss and individual terms in the All-Risk Policy such as those set forth in greater detail above.

70.     If a policyholder's understanding of its insurance coverage has been induced by misrepresentations by the insurance company, then the insurance policy should be reformed to reflect the terms as represented by the insurance company.

71.     AGLIC has failed to honor its obligations under the All-Risk Policy and Pennsylvania law to Boscov's.  As described in greater detail below, AGLIC summarily denied all coverage and breached (a) the All-Risk Policy sold to Boscov's and (b) the duties of good faith and fair dealing owed to Boscov's.  These breaches have caused great and incalculable damages to Boscov's.  AGLIC has threatened to violate and has violated its fiduciary duties to Boscov's.

72.     By engaging in evasive, dilatory, inconsistent and litigious tactics, AGLIC breached its obligation to act in good faith towards its policyholders, including Boscov's, and the public.

**G.      AGLIC's Improper Denial of Boscov's Claim and Wrongful Conduct**

73.     Boscov's promptly notified AGLIC of its claim for losses under the All-Risk Policy.

74.     In a letter dated June 10, 2020, AGLIC denied coverage in full for Boscov's losses in connection with the threat of COVID-19 outbreak, including under the All-Risk Policy's civil authority coverage provisions, notwithstanding the inability to use these businesses and actual closures of all of Boscov's Locations during the period of insurance.  Among other things, AGLIC denied that these necessary suspensions of Boscov's businesses were "due to direct physical loss of or damage to Property" caused by a "Covered Cause of Loss at the Location."

75.     In its denial letter, AGLIC incorrectly focused on whether coverage exists for "the actual presence" of COVID-19 virus, when the (deleted) Contamination exclusion requires presence of a virus for coverage to be excluded, while the (revised) Contamination exclusion deletes any restriction on coverage for either threatened or actual virus.   AGLIC failed to consider that under the (deleted) exclusion, coverage is provided for threatened but not actual virus rendering property unusable, while under the (revised) exclusion coverage is provided without any restriction.   As a result, AGLIC failed to recognize any coverage under the Policy for direct physical loss, loss of use and interruptions of Boscov's businesses.

76.     To date, AGLIC has failed to make any payment to Boscov's under the All-Risk Policy.

77.     Additionally, given the timing of the denial and failure to communicate with Boscov's about the claim in any respect, no investigation into the claim was conducted at all. Consequently, by failing to raise any other bases for denial of coverage in its premature denial letter and conducting no investigation, AGLIC waived any additional grounds to contest Boscov's claim.

78.     At no time subsequent to Boscov's providing notice to AGLIC of the claim has AGLIC or any of its representatives requested information or documentation related to the claim; or to access, inspect, and/or test the properties at issue.

79.     Boscov's has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the All Risk Policy and applicable law, or alternatively, Boscov's has been excused from performance by AGLIC's acts, representations, conduct, or omissions.

H.    **AGLIC's Pattern of Bad Faith Conduct**

80.    AGLIC and the insurance industry at large have denied coverage to policyholders like Boscov's for property damage and business income claims arising from closure orders and/or SARS-CoV-2 throughout the Commonwealth and the country because they have determined that doing so furthers their economic interests.

81.    In responding to the ongoing crisis and claims like that of Boscov's and claims by other policyholders nationwide, AGLIC like other insurers has been engaged in a pattern and practice of refusing to conduct individual analysis of claims on their merits.

82.    AGLIC's policy and practice has been to deny coverage universally for all claims involving closure orders and/or SARS-CoV-2.

83.    AGLIC has been and is engaged in an ongoing, one-sided, bad faith effort to ignore any and all obligations under all-risks property and business and interruption policies like the All-Risk Policy sold to Boscov's, without respect to any differentiation in policy terms or causes of loss.

84.    AGLIC's one-sided behavior exposes policyholders like Boscov's to the risk of severe losses and financial ruin, and has compelled Boscov's to protect itself.

85.    AGLIC is ignoring the interests of its policyholders and coverage owed to them in favor of its own interests.  AGLIC is acting only out of its self-interest.

86.    As set forth above, AGLIC has not offered a reasonable basis or explanation for its immediate denial of coverage and has not even considered the terms of the All-Risk Policy as endorsed nor sought any further detail concerning Boscov's claim.

87.    AGLIC's failure to adjust the claim of Boscov's and claims of other policyholders in good faith caused severe detriment to Boscov's and others across Pennsylvania and the nation.

## COUNT I

## DECLARATORY JUDGMENT

88.     Plaintiff incorporates by reference the allegations contained in the above-stated paragraphs.

89.     Plaintiff seeks a declaration, pursuant to 28 U.S.C. § 2201, that AGLIC is obligated, in accordance with the terms of the Policy, to provide insurance coverage for the losses of Boscov's in relation to each of its Locations.

90.     An actual and justifiable controversy exists between the parties with respect to this issue because of AGLIC's refusal to perform its obligations under the All-Risk Policy.

91.     A declaration of the parties' rights and obligations under the All-Risk Policy will serve to resolve the dispute between them.

## COUNT II

## BREACH OF CONTRACT

92.     Plaintiff incorporates by reference the allegations contained in the above-stated paragraphs.

93.     As set forth above, in return for premiums paid, AGLIC sold Boscov's an All-Risk Policy, in which AGLIC promised to pay for covered losses up to the applicable Limit of Liability.

94.     Boscov's promptly advised AGLIC it sustained and is sustaining losses covered by the All-Risk Policy.

95.     AGLIC denied coverage by way of letter dated June 10, 2020, and AGLIC denies any obligation for any of Boscov's losses.  This denial of coverage constitutes a breach of the All-Risk Policy.

96.     As a direct and proximate result of AGLIC's breach, Boscov's has been deprived of the benefits of insurance coverage for which it paid substantial premiums, and has suffered substantial damage.

## COUNT III

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AND BAD FAITH

97.     Plaintiff incorporates by reference the allegations contained in the above-stated paragraphs.

98.     The All Risk Policy contains an implied covenant of good faith and fair dealing that imposes on AGLIC an obligation to not do anything to injure the rights of Boscov's to receive the benefits of the All-Risk Policy and to not place its own interests above those of its policyholder.

99.     Additionally, Pennsylvania has codified this obligation by statute in 42 Pa.C.S. § 8371, which provides bad faith remedies for "an action arising under an insurance policy."

100.     AGLIC has an obligation to act in good faith towards Boscov's in every decision it makes regarding the claim and to respond and investigate claims in good faith.  Unfortunately, as set forth above, AGLIC has repeatedly placed its own interests ahead of those of Boscov's and other policyholders nationwide and across the Commonwealth, to the detriment of Boscov's, and AGLIC continues to refuse to undo its bad faith decisions in relation to Boscov's claim.

101.     AGLIC has acted in bad faith towards Boscov's with respect to its claim by, among other things: a) denying coverage without any investigation or effort to adjust the claim; b) denying coverage without reference to individual policy terms or individual causes of loss; c) acting in a one-sided manner and exposing Boscov's to severe losses for which Boscov's purchased appropriate insurance coverage by way of the All-Risk Policy; and d) refusing to pay

for claims without legal compulsion and forcing Boscov's to protect itself by way of this lawsuit against AGLIC.

102.    AGLIC is ignoring the interests of its policyholders and coverage owed to them in favor of its own interests.  AGLIC is acting only out of its self-interest.

103.    As set forth above, AGLIC has not offered a reasonable basis or explanation for its immediate denial of coverage and has not even considered the specific terms of the All-Risk Policy as endorsed nor sought any further detail from Boscov's concerning Boscov's claim.

104.    AGLIC's failure to investigate or adjust the claim of Boscov's and claims of other policyholders in good faith has caused severe detriment to Boscov's and other policyholders across Pennsylvania and the nation and unnecessarily exposes businesses to severe financial hardship and potentially bankruptcy, threatening the employment of thousands, and damaging the economic well-being of society as a whole.

105.    As a result of AGLIC's refusal to honor its obligation to act in good faith with respect to Boscov's claim, Boscov's has incurred costs and expenses including attorneys' fees in connection with its pursuit for insurance coverage in this lawsuit.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

(i)    On the First Count, a judicial declaration by this Court that AGLIC is obligated under the All-Risk Policy to pay Boscov's for direct physical loss of or damage caused at each Location that has been impacted by the threat of virus that deprived Boscov's of the functionality of its property.

(ii)    Boscov's seeks a further declaration that various Civil or Military Authority orders issued by governmental officials in response to the threat of virus prevented Boscov's from accessing and using its property to conduct its ordinary

business activities thereby depriving Boscov's of its property and the functionality of its property, and resulting in insured losses.

(iii)     Boscov's seeks a further declaration that its coverage under the All-Risk Policy is triggered up to the full Limit of Liability at each insured Location for Property Damage and Time Element, including Civil or Military Authority, Extra Expense, Leasehold Interest, Accounts Receivable, Contingent Business Interruption, and Protection and Preservation of Property loss.

(iv)     On the Second Count, Boscov's requests all actual and compensatory monetary damages in an amount to be proven at trial and all relief available at law for AGLIC's breach of contract in denying coverage to Boscov's under the All-Risk Policy and failing to pay any losses under the All-Risk Policy in relation to any insured Location, including costs, expenses, and reasonable attorneys' fees in this action.

(v)     On the Third Count, Boscov's requests: (a) entry of an award requiring AGLIC to pay Boscov's all monetary damages caused by AGLIC unfair and unreasonable breach of the duty of good faith and fair dealing, without limitation, including compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs, and (b) exemplary damages in an amount allowable by law; and

(vi)     The award of such additional relief as the Court deems just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of any issue triable of right by a jury in this case.

DATED this the 28th day of July, 2020.

     s/John N. Ellison
John N. Ellison, Esq. (I.D. No. 51098)
Luke E. Debevec, Esq. (I.D. No. 92860)
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T:  (215) 851-8100
F:  (215) 851-1420
jellison@reedsmith.com
ldebevec@reedsmith.com

*Counsel for Plaintiffs*
