IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOSCOV'S DEPARTMENT STORE, INC., Plaintiff, | : : : | |
| v. | : : | Civil No. 5:20-cv-03672-JMG |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, Defendant. | : : : : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                  June 29, 2021

When Plaintiff Boscov's Department Store, Inc. closed its doors because of the COVID-19 pandemic, it turned to its insurer, Defendant American Guarantee and Liability Insurance Company ("AGLIC"), to recover business losses. Like so many others faced with the same predicament, Boscov's was denied coverage. Boscov's now brings a lawsuit against AGLIC for breach of contract and a declaratory judgment. It also claims that AGLIC breached the duty of good faith and fair dealing. Before the Court are AGLIC's motions to strike and for judgment on the pleadings. For the reasons explained below, we will deny the motion to strike, but will grant the motion for judgment on the pleadings.

**I.     BACKGROUND**

Boscov's is a family-owned business that operates department stores in Pennsylvania, New York, New Jersey, Delaware, Maryland, Ohio, Connecticut, and Rhode Island. Compl. ¶ 13, ECF No. 1. Between June 1, 2019, and June 1, 2020, Boscov's maintained an all-risk insurance policy (the "Policy") with AGLIC. *Id.* ¶ 37. In relevant part, the Policy insured against "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property." *Id.* ¶ 40; *see also*

Compl. Ex. C, at 14, ECF No. 1-3.

Several Boscov's locations closed on March 13, 2020, just one week after Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency regarding COVID-19. Compl. ¶ 36; *see* Compl. Ex. A, at 4, ECF No. 1-1. Civil authorities nationwide followed suit, as "states, counties, and cities where Boscov's insured stores are located issued orders closing or restricting access to numerous Boscov's locations." Compl. ¶ 32. *See generally* Compl. Ex. A. By March 17, 2020, Boscov's closed the remainder of its stores. Compl. ¶ 36.

Soon after, Boscov's notified AGLIC of its claim for losses incurred due to the pandemic and the associated shutdown orders. *Id.* ¶ 73. AGLIC allegedly failed to investigate the matter. *Id.* ¶¶ 77–79. Instead, in a letter dated June 10, 2020, AGLIC summarily rejected Boscov's claim. *Id.* ¶ 74. It denied that the "necessary suspensions of Boscov's businesses were 'due to direct physical loss of or damage to Property' caused by a 'Covered Cause of Loss at the Location.'" *Id.*

On July 28, 2020, Boscov's sued AGLIC, alleging breach of contract, breach of the duty of good faith and fair dealing, and requesting a declaratory judgment on issues related thereto. *Id.* ¶¶ 88–105. AGLIC filed its answer, and now moves for judgment on the pleadings. *See* Answer, ECF No. 5; Def.'s Mot., ECF No. 14; Def.'s Reply, ECF No. 21. Boscov's opposes the motion and makes two requests for judicial notice, the latter of which AGLIC seeks to strike. *See* Pl.'s Opp'n, ECF No. 19; Req., ECF Nos. 20, 24; Mot. to Strike, ECF No. 26; Pl.'s Opp'n, ECF No. 29. Both parties have submitted extensive supplemental authority. *See* ECF Nos. 27-1, 34–35, 42, 45, 54–57.

## II.     STANDARD

### A.     Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). We will only grant the motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (quoting *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008)).

Motions for judgment on the pleadings are governed by "the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port. Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). Accordingly, we must determine whether the complaint is supported by well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives" dismissal. *Id.* at 678–79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).

Third Circuit courts engage in a three-step process to determine the sufficiency of a complaint. First, we "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675). Second, we "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, we assume the veracity of well-pleaded factual allegations and then "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

For purposes of this analysis, we consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Wolfington*, 935 F.3d at 195 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). We also "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citation omitted).

B.  **Judicial Notice**

On a Rule 12(c) motion, we may take judicial notice in accordance with Federal Rule of Evidence 201. *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1011 (3d Cir. 1991). Under Federal Rule of Evidence 201(b), a court "may take judicial notice of facts that are not subject to reasonable dispute because they are either 'generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) (quoting FED. R. EVID. 201(b)(2)). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c)(2).

While the Federal Rules of Evidence "allow a court to take judicial notice at any stage of the proceedings, . . . it should be done sparingly at the pleadings stage." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) (internal citation omitted). *But see, e.g.*, *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of "properly-authenticated public disclosure documents filed with the SEC" in reviewing a Rule 12(c) motion).

### C. Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)).

Rule 12(f) is directed at pleadings—not motions or briefs. *See, e.g.*, *PG Publ'g Co. v. Aichele*, 902 F. Supp. 2d 724, 735 (W.D. Pa. 2012), *aff'd*, 705 F.3d 91 (3d Cir. 2013); *see also Bunn v. Perdue*, 966 F.3d 1094, 1099 (10th Cir. 2020) ("Generally, . . . motions, briefs, and memoranda may not be attacked by a motion to strike." (quoting *Ysais v. N.M. Jud. Standard Comm'n*, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009))). That being said, "courts can entertain motions to strike beyond what Rule 12(f) provides." *McGinnis v. Midland Funding LLC*, No. 2:20-cv-05370-JDW, 2021 WL 1061198, at *1 (E.D. Pa. Mar. 19, 2021). Because "federal judges have the inherent power to manage cases that come before them," *Williams v. Guard Bryant Fields*, 535 F. App'x 205, 212 (3d Cir. 2013) (citation omitted), courts may consider "motions that a party captions a motion to strike but that are different in kind than the motions that Rule 12(f) contemplates." *McGinnis*, 2021 WL 1061198, at *1; *see, e.g.*, *Lawrence v. Int'l Bus. Mach. Corp.*, No. 12-cv-8433(DLC), 2017 WL 3278917, at *4 (S.D.N.Y. Aug. 1, 2017) (evaluating motion to strike a request for judicial notice).

### D. Interpretation of Insurance Policies

"Under Pennsylvania law, 'the interpretation of a contract of insurance is a matter of law for the courts to decide.'" *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012) (quoting *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994)). Our objective is to

discern the intent of the parties from the language of the policy. *Id.* To that end, we "read the policy as a whole and construe[] [it] according to the plain meaning of its terms." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 676 (3d Cir. 2016) (internal quotation marks and citation omitted). The policy "must be construed in such a manner as to give effect to all of its provisions." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 258 (3d Cir. 2019) (internal quotation marks and citation omitted); *see also Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018) ("The court should not consider isolated individual terms but should instead consider the entire contractual provision to determine the parties' intent." (citing *NorFab Corp. v. Travelers Indem. Co.*, 555 F. Supp. 2d 505, 509 (E.D. Pa. 2008))).

"Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)). By contrast, contractual language is ambiguous if it "is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (quoting *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1425 (3d Cir. 1994)); *see also 12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996) ("Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous." (citing *Vogel v. Berkley*, 511 A.2d 878, 881 (Pa. Super. Ct. 1986))). Ambiguous language must be construed against the insurer. *Squires*, 667 F.3d at 391.

### III. DISCUSSION

#### A. Policy Coverage

"[A]n insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears

6

the burden of demonstrating that a policy exclusion excludes the insurer from providing coverage if the insurer contends that it does." *State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citing *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996)).

Here, the Policy insures "against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property." Compl. Ex. C, at 14. Covered Causes of Loss are "[a]ll risks of direct physical loss of or damage from any cause unless excluded." *Id.* at 60. Boscov's alleges that coverage for its business losses exists under Section III and Section IV of the Policy. Compl. ¶¶ 60–61. Section III insures against property damage, Compl. Ex. C, at 22–25, while Section IV, the time element section, states:

> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location. The Suspension must be **due to direct physical loss of or damage to Property** . . . caused by a Covered Cause of Loss at the Location, or as provided in Off Premises Storage for Property Under Construction Coverages.

*Id.* at 26 (emphasis added). Boscov's also claims coverage under the following special coverage provisions:

| Provision | Provides coverage for . . . |
|---|---|
| Accounts Receivable | "the actual loss sustained resulting from **direct physical loss of or damage caused by** a Covered Cause of Loss to the Insured's account receivable records . . . ." *Id.* at 31 (emphasis added). |
| Civil or Military Authority | "the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of civil or military authority that prohibits access to the Location. That order must result from a civil authority's response to **direct physical loss of or damage caused by** a Covered Cause of Loss to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations." *Id.* at 32–33 (emphasis added). |

7

| Provision | Provides coverage for . . . |
|---|---|
| Contingent Time Element | "the actual Time Element loss . . . directly resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension results from **direct physical loss of or damage caused by** a Covered Cause of Loss to Property . . . at . . . Attraction Properties . . . ." *Id.* at 33 (emphasis added).[1] |
| Protection and Preservation of Property | "[t]he reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such actions are necessary due to **actual or imminent physical loss or damage** due to a Covered Cause of Loss . . . ." *Id.* at 41 (emphasis added). |

To state a prima facie claim for coverage under the Policy, Boscov's must plausibly allege that it suffered "direct physical loss of or damage" to covered property. *Id.* at 14. The parties do not dispute that use of the disjunctive "or" evidences an intent to differentiate between "loss of" and "damage" to property. *Compare* Def.'s Mem. 7, ECF No. 14-1, *with* Pl.'s Mem. 10, ECF No. 19. The Policy, however, does not define "direct physical loss" or "direct physical damage." This does not render the language ambiguous. *See Heebner v. Nationwide Ins. Enter.*, 818 F. Supp. 2d 853, 857 (E.D. Pa. 2011). Instead, we read the phrases according to their plain and generally accepted meanings. *See Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320–21 (3d Cir. 2011).[2]

Direct physical damage is "a distinct, demonstrable, physical alteration of the property." *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, Nos. 20-1949, 20-1869, 2020 WL 7395153, at *5 (E.D. Pa. Dec. 17, 2020) (quoting 10A COUCH ON INS. § 148.46 (3d ed. 1995)). "Pure economic losses are intangible and do not constitute property damage." *Id.* (citing 9A COUCH ON INS. § 129.7).

---

[1] Attraction Properties "attract[] customers to the Insured's business." Compl. Ex. C, at 59. They must be located within one mile of an insured location. *Id.* at 17.

[2] We note that "direct" and "physical" modify "loss of" and "damage" to property. *See Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, No. 20-2740, 2021 WL 289547, at *4 (E.D. Pa. Jan. 28, 2021); *Spring House Tavern, Inc. v. Am. Fire & Cas. Co.*, No. 20-2872, 2021 WL 2473939, at *3 (E.D. Pa. June 16, 2021). "Direct" is defined in part as "characterized by close logical, causal, or consequential relationship." *Direct*, MERRIAM-WEBSTER DICTIONARY (last visited June 21, 2021). "Physical" means "[o]f, relating to, or involving material things; pertaining to real, tangible objects." *Physical*, BLACK'S LAW DICTIONARY (11th ed. 2019).

On the other hand, "[t]o constitute direct 'physical loss' . . . economic loss resulting from an inability to utilize a premises as intended must (1) bear some causal connection to the *physical* conditions of that premises, which conditions (2) operate to completely or near completely preclude operation of the premises as intended." *4431, Inc. v. Cincinnati Ins. Cos.*, No. 5:20-cv-04396, 2020 WL 7075318, at *10 (E.D. Pa. Dec. 3, 2020); *Tria WS LLC v. Am. Auto. Ins. Co.*, No. 20-4159, 2021 WL 1193370, at *4 (E.D. Pa. Mar. 30, 2021) ("Given its ordinary meaning, the phrase 'direct physical loss of' property requires that the property be rendered unusable by some physical force.").

Third Circuit precedent supports these interpretations. In *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, the court examined whether the presence of asbestos in a building triggered insurance coverage. 311 F.3d 226, 236 (3d Cir. 2002). It recognized that, "[i]n ordinary parlance and widely accepted definition, physical damage to a property means 'a distinct, demonstrable, and physical alteration' of its structure," such as from fire, water, or smoke that "may demonstrably alter the components of a building." *Id.* at 235 (quoting 10A COUCH ON INS. § 148:46 (3d ed. 1998)). "Physical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." *Id.* Under this standard, the court concluded that the "mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage." *Id.* at 236.

The *Port Authority* court further held that "physical loss" of a structure occurs when it has been rendered "uninhabitable and unusable." *Id.* When "[t]he structure continues to function—it has not lost its utility," and there is no physical loss. *Id.*; *see also Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826–27 (3d Cir. 2005) (applying *Port Authority* under Pennsylvania

9

law and reiterating that "physical loss" means that a structure's "function is nearly eliminated or destroyed, or . . . made useless").

Courts in this District have overwhelmingly applied *Port Authority* to COVID-19 insurance disputes, interpreting "the phrase 'direct physical loss of or damage' to require a direct nexus between the alleged loss and the physical conditions of the covered premise. That is, there must be some issue with the *physical* premises which precludes or impedes the business operations, thereby causing the losses complained-of." *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, No. 20-2740, 2021 WL 289547, at *5 (E.D. Pa. Jan. 28, 2021) (citations omitted).[3]

Against this backdrop, Boscov's has not plausibly alleged "direct physical loss of or damage" to property under the Policy. Beginning with "direct physical damage," Boscov's admits that "[n]o Boscov's location has been required to respond to the actual presence of virus." Compl. ¶ 49. Instead, it alleges that "the virus has been and remains a threat to the insured properties and surrounding properties, and ongoing direct physical loss of or damage must thus be presumed." *Id.* ¶ 64. Such "general threat[s] of future damage" do not constitute "physical damage." *Port Auth.*, 311 F.3d at 236; *see, e.g.*, *Newchops*, 2020 WL 7395153, at *5 (denying insurance coverage where "[t]here was no physical damage to the insureds or others' properties alleged in the amended complaints").

---

[3] *See, e.g.*, *Spring House*, 2021 WL 2473939, at *4; *Star Buick GMC v. Sentry Ins. Grp.*, No. 5:20-cv-03023, 2021 WL 2134289, at *6 (E.D. Pa. May 26, 2021); *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2171, 2021 WL 1945712, at *6–8 (E.D. Pa. May 14, 2021); *Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 5:20-cv-06165-JMG, 2021 WL 1945713, at *4 (E.D. Pa. May 14, 2021); *RDS Vending LLC v. Union Ins. Co.*, No. 20-3928, 2021 WL 1923024, at *4 (E.D. Pa. May 13, 2021); *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2034, 2021 WL 1667424, at *5 (E.D. Pa. Apr. 28, 2021); *SSN Hotel Mgmt., LLC v. Harford Mut. Ins. Co.*, No. 20-6228, 2021 WL 1339993, at *4 (E.D. Pa. Apr. 8, 2021); *Tria WS*, 2021 WL 1193370, at *7; *J.B.'s Variety Inc. v. Axis Ins. Co.*, No. 20-4571, 2021 WL 1174917, at *4 (E.D. Pa. Mar. 29, 2021); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, No. 20-3863, 2021 WL 131555, at *4–5 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL 131556, at *5–6 (E.D. Pa. Jan. 14, 2021); *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, No. 20-03376-JDW, 2020 WL 7181057, at *4 (E.D. Pa. Dec. 7, 2020); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 99–100 (E.D. Pa. 2020). Our acknowledgment of these cases does not dispense with our responsibility to make an independent judgment on the facts before us. *Cf. United States v. Nasir*, 982 F.3d 144, 170 n.28 (3d Cir. 2020).

As to "direct physical loss" of property, Boscov's proceeds under a "loss of use" theory. *See, e.g.*, Compl. ¶ 55; Pl.'s Mem. 11. "This theory is not premised on COVID-19 contamination or other specific condition of or on the insured premises. Instead, its advocates assert that the significant restrictions imposed by the government on the manner and degree to which business owners may use their premises are sufficient, on their own, to establish 'direct physical loss of' property." *Tria WS*, 2021 WL 1193370, at *4 (citing *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405, at *5–6 (S.D.N.Y. Dec. 11, 2020)).

This theory, however, is inconsistent with a permissible reading of the Policy. For the reasons explained above, "the plain meaning of the phrase 'direct physical loss of' requires an explicit nexus between the purported loss and the physical condition of the insured property." *Star Buick GMC v. Sentry Ins. Grp.*, No. 5:20-cv-03023, 2021 WL 2134289, at *5 (E.D. Pa. May 26, 2021) (citations omitted). In other words, the insured property must "be rendered unusable by some physical force."[4] *Tria WS*, 2021 WL 1193370, at *4.

Though Boscov's business has undoubtedly been impacted by the pandemic, its alleged losses bear no causal connection to the physical condition of its properties. *See, e.g.*, *TAQ Willow*

---

[4] This reading is also consistent with the Policy's limitation of time element coverage to a "Period of Liability." Compl. Ex. C, at 26. Recovery for time element losses is limited to "[t]he period starting from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be *repaired or replaced*, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage." *Id.* at 30 (emphasis added). This provision contemplates the physical restoration of property. *See, e.g.*, *TAQ*, 2021 WL 131555, at *6 ("Built into coverage . . . is the idea that there must be something to repair, rebuild, or replace—none of which exists for mere loss of use untethered to a physical condition of the property."); *Tria WS*, 2021 WL 1193370, at *5 ("The terms 'repair,' 'rebuild,' and 'replace' strongly suggest that the insured property must have suffered some negative change in its physical condition rendering the property unsatisfactory and requiring restoration."). If mere loss of use constituted "direct physical loss" of property, then language in the "Period of Liability" provision would be rendered superfluous. *See, e.g.*, *Hair Studio*, 2021 WL 1945712, at *9 ("If there is no requirement that physical loss of or physical damage to the property be involved, the definition of the time for paying the claim makes no sense." (quoting *Real Hosp. LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-0087, 2020 WL 6503405, at *6 (S.D. Miss. Nov. 4, 2020))). We cannot countenance such a reading of the Policy. *See Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 167 (3d Cir. 2011) ("[T]his Court takes care not to render other portions of a provision or contract superfluous when construing contract language." (quoting *New Castle Cnty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 174 F.3d 338, 349 (3d Cir. 1999))).

11

*Grove, LLC v. Twin City Fire Ins.*, No. 20-3863, 2021 WL 131555, at *5 (E.D. Pa. Jan. 14, 2021). Indeed, the complaint "lacks any allegations about the existence of anything affecting the physical condition of its premises. Thus, its losses are a loss of use untethered from the physical condition of the property itself." *Id.* This is fatal to its claim. The "mere threat of spread" of COVID-19 and its "suspected presence . . . throughout the states where Boscov's Locations are located," Compl. ¶¶ 24, 61, do not amount to "direct physical loss" of covered property. *See, e.g.*, *RDS Vending LLC v. Union Ins. Co.*, No. 20-3928, 2021 WL 1923024, at *4 (E.D. Pa. May 13, 2021) ("Even if Plaintiff did suffer loss of use of the building, it was because of the presence of COVID-19 in the community and not from the coronavirus existing within the building."). Further, Boscov's did not suffer "direct physical loss" of its property due to the governmental shutdown orders that "effectively limited [its] ability to continue operations." Compl. ¶ 33. *See generally* Compl. Ex. A; Compl. Ex. B, ECF No. 1-2. "A government-imposed order which limits access to the covered premises—but has not been prompted by the condition of the physical structure— causes at most an economic loss. . . . And [such] an intangible loss is not 'direct physical' loss or damage." *Frank Van's*, 2021 WL 289547, at *6; *see also Spring House Tavern, Inc. v. Am. Fire & Cas. Co.*, No. 20-2872, 2021 WL 2473939, at *4 (E.D. Pa. June 16, 2021) (denying insurance coverage where the "Complaint only alleges that Plaintiff was unable to use its property because of the COVID-19 pandemic and the . . . resulting COVID-19 Orders"); *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2171, 2021 WL 1945712, at *8 (E.D. Pa. May 14, 2021) ("The Closure Orders . . . have no impact on the physical condition of the insured premises and do not physically make the premises either uninhabitable or unusable for their intended purpose.").

Boscov's special coverage claims likewise fail. The Accounts Receivable provision reimburses an insured "for the actual loss sustained resulting from direct physical loss of or damage

caused by a Covered Cause of Loss to the Insured's accounts receivable records." Compl. Ex. C, at 31. Boscov's has not alleged any physical damage to or loss of its records of accounts receivable. Similarly, the Protection and Preservation of Property provision reimburses an insured for "[t]he reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such actions are necessary due to actual or imminent physical loss or damage due to a Covered Cause of Loss." *Id.* at 41. As explained above, Boscov's cannot show that the pandemic and the associated shutdown orders caused physical loss or damage to any of its insured properties. *See Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, No. 20-10167 (SDW) (LDW), 2021 WL 1904739, at *3 (D.N.J. May 12, 2021) ("[T]he alleged 'presence' of the Virus in or around Plaintiff's stores [does not] equate to actual or imminent physical loss or damage of any sort.").

Boscov's also invokes the Civil or Military Authority provision, which applies when a suspension of business "is caused by order of civil or military authority that prohibits access to" insured locations. Compl. Ex. C, at 32. "That order must result from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss" to property within one mile of an insured location. *Id.*; *see id.* at 17; *see also Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 1:20-cv-781, 2021 WL 422607, at *8 (M.D. Pa. Feb. 8, 2021) ("[A] plain reading of the Civil Authority coverage provision unambiguously requires an allegation that *another* property, besides the insured premises, suffered some 'physical loss' or 'damage.'"). Absent from the complaint, though, are any well-pleaded factual allegations that property within one mile of Boscov's locations suffered "direct physical loss" or "direct physical damage." *See, e.g., Hair Studio*, 2021 WL 1945712, at *10; *Frank Van's*, 2021 WL 289547, at *7; *see also Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 503 F. Supp. 3d 251, 257 (E.D. Pa. 2020) ("[Plaintiff] did

13

not close because of damage to a nearby premise or because there was some dangerous physical condition at another nearby premise. It closed because the Shutdown Orders applied to its own operations. Its shutdown and resulting losses fall outside the scope of the Civil Authority coverage.").[5]

Finally, the Contingent Time Element provision applies when a policyholder suspends its business activities, and that suspension "results from direct physical loss of or damage caused by a Covered Cause of Loss to Property . . . at . . . Attraction Properties." Compl. Ex. C, at 33. Attraction Properties must be located within one mile of an insured location. *Id.* at 17. Boscov's alleges that the "threat of virus and the . . . closure orders issued by state, county, and city officials have caused direct physical loss of or damage to properties Boscov's depends on to attract business." Compl. ¶ 57. This conclusory allegation fails to identify any such properties located within one mile of Boscov's insured premises. But even if it had, the "threat of virus" and "closure orders" do not result in the "direct physical loss of or damage" to property necessary to trigger coverage.

In support of its claims, Boscov's asks that we take judicial notice of documents produced by the Insurance Services Office ("ISO") and certain individual insurance companies, namely, Greater New York Mutual Insurance Company, Insurance Company of Greater New York, INSCO, and Strathmore Insurance Company (collectively, "GNYM"). *See* Req., ECF No. 20; *see also* Pl.'s Mem. 5–9. The first document, filed by the ISO in 2006, reflects the organization's efforts to exclude virus-related losses from insurance coverage. Pl.'s Mem. Ex. O, ECF No. 19-

---

[5] Additionally, the relevant shutdown orders were not issued in "response to" physical damage or loss sustained to nearby property. "The Shutdown Orders were issued to address the health crisis, not some 'direct physical loss.'" *SSN Hotel*, 2021 WL 1339993, at *5; *see also Isaac's Deli*, 2021 WL 1945713, at *5 ("Preemptive safety measures intended to curb the spread of the COVID-19 virus . . . do not establish the existence of structural damage or loss to nearby properties." (citations omitted)); *Newchops*, 2020 WL 7395153, at *6 ("The shutdown orders and accompanying proclamations were in response to the COVID-19 health crisis, not damage to any property—the insureds' or another's." (citations omitted)).

16. In relevant part, it notes that "[d]isease-causing agents may render a product impure . . . or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve . . . business interruption (time element) losses." *Id.* at 6. The second document, a composite of regulatory filings, reflects GNYM's understanding that virus-related losses would "fall largely in Business Personal Property . . . and Business Interruption/Time Element coverage segments." Pl.'s Mem. Ex. P, at 36, ECF No. 19-17.

While we will take judicial notice of these materials, they do not change our conclusion. Boscov's argues that the documents "demonstrate widespread agreement in the insurance industry that virus and similar adverse conditions may cause 'direct physical loss of or damage to' insured property."[6] Pl.'s Mem. 9. "Evidence of industry custom or trade usage 'is always relevant and admissible in construing commercial contracts,' and does not depend on the existence of ambiguity in the contractual language." *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 160 (3d Cir. 2017) (quoting *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001)); *see also Sapa Extrusions*, 939 F.3d at 256–57. The ISO and GNYM documents, however, do not show that the phrase "direct physical loss of or damage to" has a "special meaning or usage" in the insurance industry. *Id.* That is, they do not suggest a "peculiar usage" of the phrase that conflicts with its unambiguous, plain meaning, or the interpretation that has emerged from precedent.[7] *See Sunbeam*, 781 A.2d at 1193.

---

[6] We are also not convinced that these documents demonstrate any "widespread agreement" that virus-related losses trigger insurance coverage. The ISO document, for example, acknowledges that "property policies have *not* been a source of recovery for losses involving contamination by disease-causing agents." Pl.'s Mem. Ex. O, at 7 (emphasis added).

[7] Boscov's separately intimates that it is entitled to discovery under a theory of regulatory estoppel. *See* Pl.'s Mem. 6–7 ("[T]he insurance industry . . . misleadingly characterized to regulators and policyholders that these new [virus] exclusions were mere 'clarifications' of coverage . . . despite case law and industry evidence corroborating that the new exclusions were actually material reductions in coverage."). Regulatory estoppel "prohibits parties from

**B. Policy Exclusion**

Even if Boscov's showed that it was entitled to insurance coverage, its claims would still be barred by the Policy's "Contamination Exclusion." The Contamination Exclusion applies to "Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." Compl. Ex. C, at 23. "Contamination," in turn, is defined as "[a]ny condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, *virus*, disease causing or illness causing agent, Fungus, mold or mildew." *Id.* at 60 (emphasis added).

The definition of "Contamination" is unambiguous and certainly applies to COVID-19. *See, e.g.*, *Star Buick*, 2021 WL 2134289, at *7 ("The virus exclusion . . . unambiguously applies to COVID-19."); *see also Hair Studio*, 2021 WL 1945712, at *11 ("Numerous courts, applying Pennsylvania law, have thoroughly addressed arguments regarding the Virus Exclusion's applicability to insurance claims based on COVID-19 shutdowns. These cases have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage."). "Because all of Plaintiff's claims for coverage are due to COVID-19, this exclusion is fatal to Plaintiff's claims." *RDS Vending*, 2021 WL 1923024, at *6.

---

switching legal positions to suit their own ends." *Sunbeam*, 781 A.2d at 1192. For example, "[i]f an insurer represented to a regulatory agency that new language in a policy would not result in decreased coverage, the insurer cannot assert the opposite position when insureds raise the issue in litigation." *Moody v. Hartford Fin. Grp., Inc.*, No. 20-2856, 2021 WL 135897, at *10 (E.D. Pa. Jan. 14, 2021) (citing *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir. 2010)). "To establish regulatory estoppel under Pennsylvania law, the party seeking to invoke it must establish that the opposing party made a statement to a regulatory agency and later adopted a position contrary to the one presented to the regulatory agency." *Newchops*, 2020 WL 7395153, at *9 (citing *Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008)). Boscov's regulatory estoppel argument fails at the outset. Indeed, AGLIC did not issue GNYM's filings, and there is no indication that AGLIC was a member of ISO or that ISO made fraudulent statements on AGLIC's behalf. *See, e.g.*, *Moody*, 2021 WL 135897, at *10–11 (rejecting regulatory estoppel argument premised on allegedly "misleading and fraudulent statements by the ISO"); *see also Newchops*, 2020 WL 7395153, at *9–10; *Kessler*, 2020 WL 7181057, at *3; *Handel*, 499 F. Supp. 3d at 101.

Boscov's attempts to sidestep the exclusion by pointing to the Policy's "Amendatory Endorsement – Louisiana." Compl. ¶¶ 51–54. Under that section of the Policy, "virus" is absent from the definition of "Contamination." *Id.*; *see also* Compl. Ex. C, at 114. Boscov's argues that this amended definition of "Contamination" applies to the entire Policy. We are not convinced. The language appears in a state-specific endorsement. "Had the parties intended to remove 'virus' from the Contamination provision, they could have done so with a general endorsement that was not limited to a single state."[8] *Manhattan Partners, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. 20-14342 (SDW) (LDW), 2021 WL 1016113, at *2 n.3 (D.N.J. Mar. 17, 2021).

In support of its argument, Boscov's asks that we take judicial notice of three documents. *See* Req., ECF No. 24. All three documents reflect AGLIC's recent efforts to modify its form insurance policies. Namely, AGLIC has added explicit language indicating that the "Amendatory Endorsement – Louisiana" applies *only* to property in Louisiana. Req. Ex. B, at 14, ECF No. 24-3. This, Boscov's contends, is a tacit admission that the Louisiana Amendatory Endorsement in its Policy is not so limited.

Again, we will take judicial notice of these materials,[9] but they do not change our conclusion. "Where the words of a contract are clear and unambiguous, its meaning must be determined by its contents alone, without reference to extrinsic aids or evidence." *Tax Matrix*

---

[8] As AGLIC recognizes, applying the Louisiana Amendatory Endorsement to the entire Policy would create conflicts among the state-specific endorsements. *See* Def.'s Mem. 19. For example, the Florida Amendatory Endorsement requires that a policyholder sue AGLIC for recovery "within five (5) years from the date of loss," while the Louisiana Amendatory Endorsement provides a 24-month time-to-sue period. *Compare* Compl. Ex. C, at 96, *with id.* at 113.

[9] Accordingly, we deny AGLIC's motion to strike the second request for judicial notice. In that second request, Boscov's asks that we take notice of regulatory filings as well as an exhibit filed in federal court. These materials are properly subject to judicial notice. *See, e.g.*, *Christoph v. AARP, Inc.*, No. 18-3453, 2019 WL 4645172, at *2 n.4 (E.D. Pa. Sept. 23, 2019) ("[T]his Court can consider . . . publicly available filings with a regulatory agency." (citing *Oran*, 226 F.3d at 289)); *Sturgeon*, 438 F. Supp. 3d at 257 ("[P]ublicly available records from other judicial proceedings may be judicially noticed . . . .").

*Techs., LLC v. Wegmans Food Mkts., Inc.*, 154 F. Supp. 3d 157, 173 (E.D. Pa. 2016) (citing *Am. Eagle*, 584 F.3d at 587). Having already found the language of the Policy clear and unambiguous, "there is no need to resort to extrinsic aids or evidence." *Am. Eagle*, 584 F.3d at 587 (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)).

### C. Good Faith and Fair Dealing

"'[T]o recover under a claim of bad faith,' the insured must show that the insurer 'did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.'" *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); *see also Treadways LLC v. Travelers Indem. Co.*, 467 F. App'x 143, 147 (3d Cir. 2012) ("Though we have held that bad faith may be found in circumstances other than an insured's refusal to pay, '[a] reasonable basis is all that is required to defeat a claim of bad faith.'" (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004))).

"Pennsylvania courts have held that if the insurer properly denied a claim, the policyholder is unable to state a bad faith claim." *Kahn*, 2021 WL 422607, at *5 n.5 (citing *Cresswell v. Pa. Nat'l Cas. Ins. Co.*, 820 A.2d 172, 179 (Pa. Super. Ct. 2003)). AGLIC properly denied Boscov's insurance claims, so it did not act in bad faith. AGLIC's alleged "failure to investigate" the matter also does not amount to bad faith. Compl. ¶ 104. Simply put, there was "nothing to investigate: coverage d[id] not exist on the face of [Boscov's] claim[s]." *Clear Hearing Sols., LLC v. Cont'l Cas. Co.*, No. 20-3454, 2021 WL 131283, at *11 (E.D. Pa. Jan. 14, 2021) (rejecting bad faith claim premised on insurer's denial of insurance coverage "without conducting any investigation");

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL 131556, at *11 (E.D. Pa. Jan. 14, 2021) (same).

### D. Leave to Amend

AGLIC properly denied Boscov's insurance claims, so it did not breach[10] the Policy or act in bad faith. Still, we must determine whether Boscov's is entitled to amend its complaint. *See* FED. R. CIV. P. 15(a)(2).

Boscov's specifically "requests leave to re-plead based on recently-developed evidence of the presence of the virus at Boscov's locations as well as positive cases of COVID-19 involving employees and customers." Pl.'s Mem. 21. Such an amendment would be futile, so we will not grant leave to amend. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("Leave to amend may be denied . . . if amendment would be futile."). Any new allegations regarding the "actual presence" of COVID-19 at Boscov's properties would fall squarely within the reach of the Policy's Contamination Exclusion.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to strike is denied and its motion for judgment on the pleadings is granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[10] "Under Pennsylvania law, 'three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[] (3) resultant damages.'" *Doe v. Univ. of Scis.*, 961 F.3d 203, 211 (3d Cir. 2020) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)). Where, as here, "the insurer properly denied coverage, a breach of contract claim cannot stand." *Kahn*, 2021 WL 422607, at *5 n.5 (citing *Foster v. USAA Cas. Ins. Co.*, No. 10-5755, 2013 WL 6869034, at *7 (E.D. Pa. Dec. 31, 2013)). Our determination that coverage was properly denied also "preclude[s] the availability of a declaration proclaiming the opposite." *Id.* (citing *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019)).